**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MAURICE A. JACKSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No.  09-cv-688-JPG-PMF** |
| ) | |
| **RASHONDA POLLION, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**REPORT AND RECOMMENDATION**</u>

**FRAZIER, Magistrate Judge:**

Before the Court are motions for summary judgment (Doc. Nos. 70, 74).  Plaintiff Maurice Jackson is proceeding on Count 1, his § 1983 claim challenging the conditions he experienced during his confinement at Menard Correctional Center between February 15 and March 9, 2009.  Specifically, Jackson alleges that defendants Rashonda Pollion and James Ryan violated the Eighth Amendment's proscription against cruel and unusual punishment by responding with deliberate indifference to his serious medical need for anti-hypertensive medicines.  Jackson alleges that Pollion purposefully refused to give him medication to treat hypertension and that Ryan never responded to a written grievance regarding the denial of his medication (Doc. No. 1).  The motions are opposed (Doc. Nos. 76, 77).

**I.      Standard of Review**

Summary judgment will be entered if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The facts and all reasonable inferences are drawn in favor of the nonmoving party.  *Ault v. Speicher, 634 F.3d 942, 945* (7th Cir. 2011).  A genuine issue of material fact exists when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## II. Deliberate Indifference – Rashonda Pollion

Defendant Pollion seeks judgment in her favor on the subjective element of Jackson's Eighth Amendment claim. Pollion argues that the evidence could not support a finding that her conduct qualifies as deliberate indifference because Jackson cannot prove that she actually knew he faced a substantial risk of harm from the lack of medication. Jackson's position is that a factual dispute remains for trial, based on his deposition testimony that he described his complaints in request slips and sent the requests slips to Pollion (Doc. No. 76, p. 6).

In medical care cases, an Eighth Amendment deprivation occurs when a prison official responds with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Medical negligence does not suffice. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also draw that inference. *Crowder v. True*, 74 F.3d. 812, 815 (7th Cir. 1996), *quoting Farmer v. Brennan*, 114 S.Ct. 1970, 1979 (1994). If a risk of harm is obvious, a fact-finder may infer knowledge of a substantial risk of harm. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Anti-hypertensive medications were first prescribed for Jackson in 2007. Pollion checked and re-checked Jackson's blood pressure readings and evaluated his symptoms. She prescribed two medicines: hydrochlorothiazide and amlodipine (Doc. No. 76-1, pp. 10-11, 48; Doc. No. 76-2, p. 15, 19; Doc. No. 76-3, p. 17). The prescriptions were written for the period between November, 2008, and April, 2009 (Doc. No. 76-3, p. 17). Although Jackson initially refused treatment, Pollion explained that his ailment placed him at risk of stroke, heart attack or death and persuaded him to

comply with treatment (Doc. No. 76-1, p. 15). While Pollion prescribed medicine, she did not fill prescriptions or distribute medicine to inmates. At Menard, prescriptions are filled by a pharmacy in Pennsylvania. Once a prescription has been filled, pharmacy technicians distribute medicines to medical technicians. In turn, medical technicians administer medicines directly to inmates in the cell blocks (Doc. No. 76-1, pp. 10-13; Doc. No. 76-2, pp. 17-18). Anti-hypertensive medicines are delivered to inmates in blister packs containing 30 pills. In Jackson's case, a blister pack provides a one-month supply (Doc. No. 76-1, pp. 10-11).

Jackson did not receive anti-hypertensive medications between February 15 and March 9, 2009. On February 26, 2009, a nurse drew blood from Jackson for laboratory tests. On February 27, 2009, another nurse saw Jackson in order to evaluate his complaint of stomach pain. When Jackson explained that he needed medication for hypertension, that nurse appeared to become upset and walked away. On March 3, 2009, a member of the medical staff collected a urine sample from Jackson for additional laboratory tests (Doc. No. 76-1, pp. 17-18, 37; Doc. No. 76-3, p. 18-19).

Jackson attempted to contact Pollion for assistance with his medication. He constantly sent sick call slips to the health care unit, specifically mentioning Pollion. In those slips, he explained that he needed medication to treat hypertension. He described symptoms which he perceived as indicating high blood pressure: vision loss, visual images, headaches, face-tightening, and nosebleeds (Doc. No. 76-1, p. 12, 19).

Pollion did not receive Jackson's request slips and did not otherwise learn that Jackson was not receiving the medicines prescribed to treat his hypertension (Doc. No. 76-3, p. 41-42).

On March 9, 2009, Jackson was called to attend a routine clinic for inmates with hypertension. His vital signs and blood pressure readings were checked and laboratory test results

were reviewed. Dr. Fuentes evaluated Jackson's condition and made a note indicating that Jackson reported that he had not received his blood pressure medications for three weeks. Jackson formed the impression that his blood pressure reading was elevated. He received a new prescription for medication from Dr. Fuentes and started receiving blister packs once again (Doc. No. 76-1, pp. 21-22; Doc. No. 76-2, pp. 14-15; Doc. No. 76-3, pp. 13-16).

Pollion's testimony shows that her sole responsibility for medication was to keep prescriptions current. Her duties did not include filling Jackson's prescriptions or administering medications to Jackson. Also, Pollion was not responsible for collecting or processing inmate request slips (Doc. No. 76-3, pp. 33-34, 36-37, 42-43).

Jackson's testimony regarding his request slips does not contradict evidence demonstrating that Pollion did not receive the request slips and had no actual knowledge that Jackson was not receiving anti-hypertensive medication. The evidence outlined above could not reasonably support an inference that Pollion actually knew that Jackson was exposed to conditions presenting a substantial risk of harm between February 15 and March 9, 2009. In the absence of such knowledge, Pollion's conduct does not qualify as deliberate indifference. Pollion is entitled to judgment in her favor on Count 1.

### III.    Objectively Serious Medical Need

Defendant Ryan seeks judgment in his favor on the objective element of Jackson's Eighth Amendment claim. Jackson's claim against Ryan, a correctional counselor at the relevant time, is that Ryan failed to respond to Jackson's written grievance explaining his need for anti-hypertensive medication. Plaintiff maintains that he faced a risk of death or stroke while he was not taking anti-hypertensive medication.

A medical condition need not be life threatening in order to qualify as objectively serious. It is enough that a reasonable doctor or patient would deem the condition important and worthy of comment or treatment. *Hayes v. Snyder*, 546 F.3d 516, 523-24 (7th Cir. 2008).

Ryan points to evidence suggesting that Jackson personally felt that his medical condition was not serious enough to require medical treatment. Records maintained by the prison indicate that sick call passes were issued at Jackson's request for February 27 and March 6, 2009. Jackson was not seen by members of the prison's medical staff as planned because Jackson went to the prison's exercise yard (Doc. No. 75-2, p. 60-61, 83). In response, Jackson points to evidence that his blood pressure was evaluated on March 9, 2009. The reading: 142/78, was not considered to be an acceptable level for a hypertensive patient (Doc. No. 76-2, pp. 37-38). When Dr. Fuentes reviewed Jackson's records, she offered the opinion that "this person needs to take antihypertensive medications to control his blood pressure." (Doc. No. 76-2, p. 38). The Court is satisfied that Jackson can present evidence permitting a reasonable inference that his need for medication between February 27 and March 6, 2009, was objectively serious.

## IV.    Deliberate Indifference - Ryan

Ryan argues that the evidence could not support a finding that he responded to Jackson's medical needs with a sufficiently culpable state of mind. He points to Jackson's testimony, which suggests that any defect in the grievance process did not interfere with his access to the prison's health care system (Doc. No. 76-1, p. 39). Jackson responds that material facts remain in dispute, pointing to Ryan's testimony that he may have received a grievance from Jackson regarding defendant Pollion (Doc. No. 75-3, p. 34).

Ryan was a correctional counselor at Menard Correctional Center during the relevant period (Doc. No. 76-1). At some point prior to February 23, 2009, Jackson sent a written grievance to Ryan

regarding his high blood pressure medication (Doc. No. 76-1, p. 44).  At the time, the prison had several procedures in place for addressing inmate medical concerns.  Once procedure was initiated when an inmate requested medical attention or used a sticker to request medication refills.  Inmates use this procedure by depositing a request slip in the sick call box (Doc. No. 76-1, p. 35-36; Doc. No. 75-2, pp. 52-54).  Another procedure was a scheduled clinic, which is automatic for inmates who, like Jackson, have chronic medical problems (Doc. No. 75-2, p. 12-13).  Another procedure is an observed therapy system (Doc. No. 75-2, pp. 50, 57).  Jackson testified that Ryan's failure to respond to his grievance was unprofessional (Doc. No. 76-1, p. 40).

The materials submitted do not reasonably suggest that Ryan prevented Jackson from receiving prescribed medication or that Ryan interfered with Jackson's direct access to members of the prison's medical staff.  In these circumstances, a defect in the handling of Jackson's written grievance would fall into the range of negligent behavior.  Negligent failure to respond to an inmate's grievance regarding health care does not suffice to prove deliberate indifference.  *See Collins v. Prater*, No. 06-cv-396-GPM (S. D. Ill. Feb. 9, 2007).  Ryan has demonstrated that he is entitled to judgment in his favor on Jackson's Eighth Amendment claim.

## V.    Conclusion

IT IS RECOMMENDED that defendants' motions for summary judgment (Doc. Nos. 70, 74) be GRANTED.  If this recommendation is adopted, no claims will remain for decision.

**SUBMITTED:   March 12, 2012  .**

    **S/Philip M. Frazier**
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**